## HAMILTON *v.* BELL *et al.*

1. A petition in equity instituted by children as heirs at law, to set aside a judgment of the court of ordinary setting apart a statutory year's support to a woman as the widow of their deceased father, alleged that the woman and man entered into a bigamous marriage, the man having "a living wife" at the time, and the woman "well knowing" that fact, she "having resided with them in their home prior to said bigamous marriage," and "having caused" their separation; that, the man having died, the woman "claiming to be the wife and widow" of the man had set aside in the court of ordinary, "as a year's support for herself," described property left by the man; that said "year's support . . was obtained through the false and fraudulent representations of the said defendant; she never having been, at the time of his death or at any other time, the wife of" the man. *Held:*

(a) An allegation of fact in a petition to the court of ordinary, which is necessary to give the court jurisdiction and is known by the petitioner to be false, is a fraud upon the court that will render the judgment of the court subject to collateral attack in a court of equity, and to be set aside as void. *Neal* v. *Boykin,* 129 *Ga.* 676 (59 S. E. 912, 121 Am.

Appeal and Error 4 C. J. p. 1072, n. 41.
Judgments 34 C. J. p. 491, n. 33; p. 566, n. 55.
Marriage 38 C. J. p. 1297, n. 62; p. 1325, n. 70; p. 1326, n. 74.
Trial 38 Cyc. p. 1575, n. 29.

St. R. 237); *Lester* v. *Reynolds*, 144 *Ga*. 143 (86 S. E. 321); *Wallace* v. *Wallace*, 142 *Ga*. 408 (83 S. E. 113). On collateral attack generally, see *Fite* v. *Henson*, 157 *Ga*. 679 (122 S. E. 412).

(*b*) The judge did not err in overruling the general demurrer.

2. An assignment of error on the admissibility of evidence was not argued in the brief of the attorneys for the plaintiff in error, and will be treated as abandoned.

3. If a man who had a living wife undivorced entered into a ceremonial marriage with another woman who was not shown to have known of the former marriage, and they cohabitated as husband and wife from the time of such marriage and continued to do so after the death of the first wife, they will be considered thereafter as lawfully married.

(*a*) The facts of the subsequent death of the first wife and continued cohabitation by the man and second woman as husband and wife are sufficient to show a change of the character of the cohabitation which commenced unlawfully, and an agreement between them after removal of the prior disability to become husband and wife.

(*b*) Under the pleadings and conflicting evidence it was erroneous to direct a verdict for the plaintiffs.

No. 4796.   February 11, 1926.

Equitable petition. Before Judge Meldrim. Chatham superior court. December 31, 1924.

*Oliver & Oliver*, for plaintiff in error.

*Gignilliat & O'Neal*, contra.

Atkinson, J. 1-2. The rulings announced in the first and second headnotes do not require elaboration.

3. The evidence in this case showed that the man ˏreferred to in the first headnote (plaintiff's father) ˋhad a ceremonial marriage with Lula Clark on July 4, 1916; that Lula left him in January, 1917; that he entered into a ceremonial marriage with the defendant on July 4, 1918; that Lula died on November 24, 1919, and the man died in 1923; that from the time of the ceremonial marriage of July 4, 1918, the defendant and the man lived together as husband and wife and held themselves out to the world as such until the death of Lula, and continued afterwards so to live and were so holding themselves out to the world at the time of the death of the man. The defendant also testified that she did not know the woman Lula until after her marriage to the man; that the man told her that he had three dead wives, but the defendant did not know of his having lived with any other woman. This last part of the defendant's testimony was contradicted by evidence introduced by the plaintiffs. There was no contention by the defendant that the marital relation be-

tween the former wife, Lula, and the man was dissolved by divorce. The contention was, that, in virtue of defendant's ceremonial marriage with the man, and their conduct above indicated after the death of Lula, the relation of lawful husband and wife came into existence and was existing at the time of the man's death, so that the woman would be entitled as his lawful wife to have a statutory year's support out of his estate. In the circumstances above indicated, the defendant's ignorance of the previous marriage of the man would not alone be sufficient to render her ceremonial marriage lawful. Civil Code (1910), § 2931; *Clark* v. *Cassidy*, 62 *Ga.* 407 (5) ; *Wilson* v. *Allen*, 108 *Ga.* 275 (33 S. E. 975). There was a presumption that the defendant's ceremonial marriage was valid (*Murchison* v. *Green*, 128 *Ga.* 339, 57 S. E. 709, 11 L. R. A. (N. S.) 702) ; but when it is conceded that at the time of such marriage the former marriage of the man to Lula was undissolved, such presumption no longer exists; and if nothing more appeared, the defendant could not be held to have been the lawful wife of the man. Under those circumstances, notwithstanding the ceremonial marriage the defendant's relation and cohabitation with the man would have been unlawful in its inception only because of the man's incapacity to contract marriage. In *Drawdy* v. *Hesters*, 130 *Ga.* 161 (4-6) (60 S. E. 451, 15 L. R. A. (N. S.) 190), it was held: "If a cohabitation between a man and a woman is shown to have been illicit in its inception, in the absence of proof to the contrary the illicit relation will be presumed to have continued throughout the period of cohabitation. Such presumption may be overcome by direct or circumstantial evidence affirmatively showing that, pending the illicit relation, the parties entered into an agreement to become husband and wife, and thereafter continued the cohabitation in the new relation. The burden of proof is upon the party asserting the agreement." The opinion quoted approvingly from 1 Andrews Am. L. (2d ed.) § 486, as follows: "Where the inception is illegal or illicit, the ordinary presumption of continuance applies until there is a change in the circumstances, but a very slight change will be seized hold of in order to presume the marriage." In that case both parties understood that the cohabitation was meretricious in its inception and the only affirmative facts proved to show a change in the circum-

stances were that the man and woman went off on a trip, declaring that they were going for the purpose of being married, and that there was no other purpose for them to go, and that they returned and continued to cohabit and hold themselves out to the world as husband and wife. The doctrine was also applied in *Smith* v. *Smith,* 84 *Ga.* 440 (11 S. E. 496, 8 L. R. A. 362). The facts in that case were that the man was incompetent to marry, because he had not attained the age at which he could lawfully contract marriage, and the only facts to affirmatively show a change of circumstances were that the man's disability was removed by attainment of the marriageable age and that thereafter the parties continued to cohabit and hold themselves out to the world as husband and wife. Such facts were held sufficient. To the same effect was the decision in *Powers* v. *Powers,* 138 *Ga.* 65 (74 S. E. 759). See also *Eubanks* v. *Banks,* 34 *Ga.* 407 (3). The doctrine was also applied in the case of *Smith* v. *Reed,* 145 *Ga.* 724 (89 S. E. 815, L. R. A. 1917A, 492). In that case there was evidence tending to show that a man married in 1871, having at the time a living wife who subsequently died in 1890; that the man and the second woman lived together as husband and wife for 20 or 30 years; that she died in 1907, and he in 1911. There was no evidence to show that the second woman had any knowledge of the existence of the first wife. Under such facts there was the question of whether the second marriage, which was unlawful in its inception, became lawful by the continued cohabitation of the man and the second woman as husband and wife from the date of their ceremonial marriage until the death of the second woman, which occurred 17 years after the death of the first wife. There was nothing else to show affirmatively a change in the circumstances in which the man and second woman lived, except the facts that the former wife died and subsequently the man and second woman continued to live together as husband and wife until the death of the second woman. These facts were deemed sufficient to show that the second ceremonial marriage became lawful after the death of the first wife; and it was held: "If a man who had a living wife undivorced entered into a ceremonial marriage with another woman, who was not shown to have known of the former marriage, and they cohabited as man and wife for many years, and con-

tinued so to do after the death of the first wife, they will be considered thereafter as lawfully married." In the case under consideration the facts are in all respects similar to those involved in the case of *Smith* v. *Reed,* supra, except the length of time elapsing after the death of the first wife. The difference would not prevent the ruling from being applicable as a binding precedent. The facts are at least as strong as those which were held sufficient in the cases of *Smith* v. *Smith* and *Drawdy* v. *Hesters,* supra. Under the pleadings and conflicting evidence, the question whether the defendant was the wife of the man at the time of his death, should have been submitted to the jury, and it was erroneous to direct a verdict for the plaintiffs.

*Judgment reversed. All the Justices concur.*